## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO.   16-31578 |
| BAYTEX CREDIT CORP. | § | |
| | § | CHAPTER 11 |
| DEBTOR | § | |

---

### DEBTOR'S PLAN OF REORGANIZATION

---

**Dated:** April 1, 2016

**Prepared by:**

Jarrod B. Martin
Texas Bar No.  24070221
jmartin@nathansommers.com
Ronald J. Sommers
Texas Bar No. 18842500
rsommers@nathansommers.com

NATHAN SOMMERS JACOBS,
A PROFESSIONAL CORPORATION
2800 Post Oak Blvd. 61st Floor
Houston, TX 77056
(713) 960-0303 (main)
(713) 892-4800 (fax)

**Attorneys for Baytex Credit Corp.,
Debtor-in-Possession**

## <u>TABLE OF CONTENTS</u>

**Section 1:     DEFINITIONS, INTERPRETATION AND COMPUTATION OF TIME .... 1**

  1.1    Definitions ................................................................................................... 1
  1.2    Interpretation; Application of Definitions and Rules of Construction ........................... 7
  1.3    Computation of Time ............................................................................... 8

**Section 2:     ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS ........................ 8**

  2.1    Administrative Expense Claims ............................................................... 8
  2.2    Deadline for Filing Administrative Expense Claims ................................. 9
  2.3    Priority Tax Claims ................................................................................. 9
  2.4    Full Settlement ....................................................................................... 9

**Section 3:     CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ..................... 9**

**Section 4:     TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS .. 10**

  4.1    Class 1 - General Unsecured Claims ..................................................... 10
  4.2    Class 2 - Equity Interests ...................................................................... 10

**Section 5:     IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS
IMPAIRED AND UNIMPAIRED BY THE PLAN; ACCEPTANCE OR REJECTION OF
THE PLAN   ....................................................................................................... 11**

  5.1    Holders of Claims Not Impaired by the Plan are Conclusively Presumed to Have
Accepted the Plan ............................................................................................. 11
  5.2    Holders of Claims Impaired by the Plan and Entitled to Vote ..................... 11
  5.3    Non-Consensual Confirmation ............................................................... 11

**Section 6:     MEANS FOR IMPLEMENTATION OF THE PLAN .................................. 11**

  6.1    Continuing Existence and Operation of the Debtor ................................. 11
  6.2    Post-Confirmation Corporate Governance ............................................. 12
  6.3    Administration of the Plan ..................................................................... 12
  6.4    Compensation of Officers ....................................................................... 12
  6.5    Distributions under the Plan ................................................................... 13
  6.6    Retention of Professionals by the Reorganized Debtor ........................... 13
  6.7    Reserve for Plan Expenses .................................................................... 13
  6.8    Other Accounts ...................................................................................... 13
  6.9    Causes of Action: Preservation, Retention and Authority ........................ 13
  6.13   Closing of the Chapter 11 Case ............................................................. 14
  6.14   Disputed Claims .................................................................................... 14

**Section 7:      PROVISIONS GOVERNING DISTRIBUTIONS**............................................ **15**

7.1   Delivery of Distributions ................................................................................. 15
7.2   Manner of Payment under the Plan ................................................................. 16
7.3   Setoffs and Recoupment ................................................................................. 16
7.4   Initial Distribution .......................................................................................... 16
7.5   Date of Distributions ...................................................................................... 16
7.6   Minimum Distributions ................................................................................... 16
7.7   Unclaimed Property ......................................................................................... 16
7.8   Withholding Taxes .......................................................................................... 17
7.9   Fractional Cents .............................................................................................. 17

**Section 8:      PROCEDURES FOR TREATING DISPUTED CLAIMS UNDER THE PLAN** ................................................................................................................... **17**

8.1   Disputed Claims Process ................................................................................. 17
8.2   No Distributions Pending Allowance .............................................................. 17
8.3   Distributions after Allowance ......................................................................... 17

**Section 9:      TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ................................................................................................................ **18**

9.1   Assumption or Rejection of Executory Contracts and Unexpired Leases ................... 18
9.2   Bar to Rejection Damage Claims .................................................................... 18

**Section 10:     CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE** ................................................................................................................... **18**

10.1   Conditions to Confirmation Date ................................................................... 18
10.2   Conditions Precedent to Effective Date of the Plan ....................................... 19
10.3   Waiver of Conditions Precedent..................................................................... 19
10.4   Effect of Failure of Conditions ..................................................................... 19

**Section 11:     EFFECT OF CONFIRMATION**.................................................................. **20**

11.1   Vesting of Assets ........................................................................................... 20
11.2   Binding Effect ............................................................................................... 20
11.3   Discharge of Debtor ...................................................................................... 20
11.4   Term of Injunction or Stays........................................................................... 20

**Section 12:     RETENTION OF JURISDICTION** ............................................................. **21**

**Section 13:      MISCELLANEOUS PROVISIONS** ...................................................................... **22**

13.1    Payment of Statutory Fees ............................................................................... 22
13.2    Modification of Plan......................................................................................... 22
13.3    Revocation of the Plan ..................................................................................... 23
13.4    Successors and Assigns ................................................................................... 23
13.5    Governing Law ................................................................................................ 23
13.6    Reservation of Rights ...................................................................................... 23
13.7    Plan Proposed In Good Faith........................................................................... 24
13.8    Further Assurances .......................................................................................... 24
13.9    Service of Documents...................................................................................... 24
13.10   Filing of Additional Documents ..................................................................... 24
13.11   Entire Agreement............................................................................................. 24
13.12   Conflicts .......................................................................................................... 25
13.13   Severability...................................................................................................... 25
13.14   Article 1146 Exemption .................................................................................. 25
13.15   Immediate Binding Effect ............................................................................... 25

Baytex Credit Corp., (hereinafter the "Debtor") hereby proposes the following Plan of Reorganization (the "Plan"), dated as of April 1, 2016 pursuant to 11 U.S.C. § 1121(a).

**Section 1:**     **DEFINITIONS, INTERPRETATION AND COMPUTATION OF TIME**

1.1     <u>Definitions</u>

Except as otherwise defined in this Plan, in the terms and conditions set forth below, and as used in the Plan, capitalized terms have the meanings set forth and defined immediately below; or, as defined in the text of the Plan. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

| | |
|---|---|
| *Administrative Expense Claim* | Means any right to payment constituting a cost or expense of administration of the Chapter 11 Case under Sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Estate or operating the business of the Debtor, (b) all compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under Sections 330, 331 or 503 of the Bankruptcy Code, and (c) fees or charges assessed against the estate of the Debtor under Section 1930 of Chapter 123 of Title 28 of the United States Code. |
| *Allowed* | Means, with respect to Claims or Equity Interests, (a) any Claim against or Equity Interest in the Debtor, proof of which is timely filed, or by order of the Bankruptcy Court is not or will not be required to be filed, (b) any Claim or Equity Interest that has been or is hereafter listed in the Schedules as neither disputed, contingent or unliquidated, and for which no timely filed proof of claim or interest has been filed, or (c) any Claim or Equity Interest allowed pursuant to the Plan; provided, however, that with respect to any Claim or Equity Interest described in clauses (a) or (b) above, such Claim or Equity Interest shall be allowed only if (i) no objection to allowance thereof has been interposed within the applicable period of time fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (ii) such an objection is so interposed and such Claim or Equity Interest shall have been allowed by a Final Order (but only if such allowance was not solely for the purpose of voting to accept or reject the Plan). Unless otherwise specified in the Plan or in a Final Order of the Bankruptcy Court allowing such claim, "Allowed" in reference to a Claim shall not include (a) interest on the amount of such Claim accruing from and after the Petition |

- 1 -

|  | Date, (b) punitive or exemplary damages, or (c) any fine, penalty or forfeiture. |
|---|---|
| *Avoidance Actions* | Means any claims or causes of action arising or assertable under Chapter 5 of the Bankruptcy Code. |
| *Ballot* | Means the form distributed to impaired classes of Claims and Equity Interests to indicate acceptance or rejection of the Plan. |
| *Bankruptcy Code* | Means Title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Case. |
| *Bankruptcy Court* | Means the United States District Court for the Southern District of Texas having jurisdiction over the Chapter 11 Case and, to the extent of any reference under Section 157 of Title 28 of the United States Code, the unit of such District Court under Section 151 of Title 28 of the United States Code, known as the United States Bankruptcy Court for the Southern District of Texas. |
| *Bankruptcy Rules* | Means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of Title 28 of the United States Code, and any Local Rules of the Bankruptcy Court. |
| *Bar Date* | Means June 14, 2016 at 5:00 p.m. |
| *Business Day* | Means any day other than a Saturday, Sunday or any "Legal Holiday" as defined in the Bankruptcy Code. |
| *Cash* | Means legal tender of the United States of America and equivalents thereof. |
| *Causes of Action* | Means, without limitation, any and all claims, actions, adversary proceedings, causes of action (including Avoidance Actions), liabilities, obligations, rights, suits, debts, sums of money, damages, judgments and demands whatsoever, whether pending or not pending, known or unknown, disputed or undisputed, legal or equitable, absolute or contingent. |
| *Chapter 11 Case* | Means the case under Chapter 11 of the Bankruptcy Code, styled *In re Baytex Credit Corp.*, Case No. 16-31578 currently pending in the Bankruptcy Court. |

- 2 -

| | |
|---|---|
| *Claim* | Has the meaning set forth in Section 101(5) of the Bankruptcy Code. |
| *Claim Holder* | Means the Holder of an Allowed Claim. |
| *Claims Objection Bar Date* | Means, for all Claims, sixty (60) days after the Effective Date or such later date as provided for by Final Order of the Bankruptcy Court, which Final Order may be entered without further notice. |
| *Class* | Means a category of Holders of Claims or Equity Interests as set forth in the Plan. |
| *Collateral* | Means any property of the Debtor that is subject to a valid and enforceable lien to secure a Claim. |
| *Confirmation* | Means the entry of the Confirmation Order on the docket of the Bankruptcy Court. |
| *Confirmation Date* | Means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket, within the meaning of Bankruptcy Rules 5003 and 9021. |
| *Confirmation Hearing* | Means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time. |
| *Confirmation Order* | Means the order of the Bankruptcy Court Confirming the Plan pursuant to Section 1129 of the Bankruptcy Code. |
| *Creditor* | Means the Holder of a Claim against the Debtor or the Estate. |
| *Debtor* | Means Baytex Credit Corp., in its capacity as a pre-petition entity or a Debtor in Possession in this Chapter 11 Case. |
| *Debtor's Counsel* | Means Nathan Sommers Jacobs, A Professional Corporation. |
| *Disclosure Statement* | Means the Disclosure Statement relating to the Plan filed in this case, as such document may be amended, modified, and/or supplemented, including, without limitation, all exhibits and schedules thereto. |
| *Disputed* | Means, with respect to a Claim or Equity Interest, any such Claim or Equity Interest that is not Allowed. |

- 3 -

| | |
|---|---|
| *Distribution Date* | Means the date or dates on which any of the Initial Distributions, any subsequent distributions, or the Final Distribution are made. |
| *Effective Date* | Means the fifteenth (15th) day following the entry of the Confirmation Order; provided, however, that if prior to such date, all conditions to the Effective Date set forth in Sections 4 and 10 of the Plan have been satisfied or waived, then the Effective Date shall be the first Business Day following the day on which all such conditions to the Effective Date have been satisfied or waived. |
| *Employee Wage Claim* | Means Allowed Claims for pre-petition wages of former employees of the Debtor, which are entitled to priority treatment under 11 U.S.C. § 507(a)(4), not exceeding the applicable statutory limit for such priority treatment. Allowed Claims for wages by former employees of the Debtor in excess of the applicable statutory limit shall be Allowed, if at all, as Unsecured Claims. |
| *Equity Interest* | Means the ownership interest of any shareholder or member of the Debtor. |
| *Estate* | Means all property of the bankruptcy estate of the Debtor in its Chapter 11 Case pursuant to Bankruptcy Code Section 541. |
| *Estate Funds* | Means all Cash that is Property of the Estate and all Cash that constitutes proceeds from Property of the Estate, wherever located and whenever acquired. |
| *Expense Reserve* | Shall have the meaning set forth in Section 6.5 of the Plan. |
| *File, Filed, or Filing* | Means file, filed, or filing with the Bankruptcy Court in the Chapter 11 Case, in accordance with the provisions of Rule 5005 of the Bankruptcy Rules. |
| *Final Distribution* | Means the last distribution of Cash or other proceeds from the liquidation of the Property of the Estate to Creditors under the Plan. |
| *Final Order* | Means a final appealable order of the Bankruptcy Court that has not been stayed or superseded. The right to file an appeal or the pendency of an appeal absent a stay shall not cause such order not to be a Final Order. |

| | |
|---|---|
| *Force Majeure Event* | Means a significant disruption caused by outbreak of war (declared or undeclared), terrorism, acts of God, storms, floods, riots, fires, sabotage, civil commotion or civil unrest, interference by civil or military authorities, and failure of energy sources, or other similar incidents. |
| *Governmental Unit* | Means a governmental unit as such term is defined in Bankruptcy Code Section 101(27). |
| *Holder* | Means a person or entity that asserts a Claim against the Debtor's Estate or asserts an Interest in the Debtor |
| *Impaired* | Means, with respect to any Claim or Equity Interest, "impaired," as defined in Bankruptcy Code Section 1124. |
| *Initial Distribution* | Has the meaning set forth in Section 7.4 of the Plan. |
| *Initial Distribution Date* | Means the date upon which the Initial Distribution occurs. |
| *Insider* | Has the meaning set forth in Bankruptcy Code Section 101(31). |
| *Insider Claim* | Means the Claim of any Insider. |
| *Interest* | Has the same meaning as Equity Interest. |
| *Lien* | Has the meaning set forth in Section 101(37) of the Bankruptcy Code. |
| *Other Priority Non-Tax Claim* | Means Claims which are entitled to priority in accordance with Section 507(a) of the Bankruptcy Code (other than Administrative Expense Claims, Employee Wage Claims and Priority Tax Claims). |
| *Person* | Means a natural person, or any legal entity or organization including, without limitation, any corporation, partnership (general or limited), limited liability company, business trust, unincorporated organization or association, joint stock company, trust, association, governmental body (or any agency, instrumentality or political subdivision thereof), or any other form of legal entity. |
| *Petition Date* | Means April 1, 2016 the date on which the Debtor commenced its Chapter 11 Case. |

- 5 -

| | |
|---|---|
| *Plan* | Means the Debtor's Plan of Reorganization, as such document may be amended, modified, or supplemented, including all exhibits or addenda thereto or referenced therein. |
| *Plan Expenses* | Shall mean all actual and necessary costs and expenses incurred in connection with the administration of the Plan, and, to the extent authorized by the Plan, the Claims of any Professionals retained by the Reorganized Debtor. |
| *Priority Tax Claim* | Means any Claim of a Governmental Unit of the kind specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code. |
| *Professional* | Means any professional person employed in the Chapter 11 Case pursuant to Bankruptcy Code Sections 327 or 1103 or any professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to Bankruptcy Code Section 503(b)(4), or any attorney, accountant, appraiser, or broker engaged by the Reorganized Debtor for the purpose of assisting the Debtor in administering the Plan. |
| *Property* | Means all property of the Estate of any nature whatsoever, real or personal, tangible or intangible, previously or now owned by the Debtor, or reacquired by the Estate, as defined in Bankruptcy Code Section 541. |
| *Ratable Share* | Means, with reference to any distribution on account of any Allowed Claim or Allowed Equity Interest in any Class, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim or Allowed Equity Interest bears to the aggregate amount of all Allowed Claims or Allowed Equity Interest in that Class. |
| *Rejection Claim* | Means any Claim arising from the rejection of any executory contract or unexpired lease, including any Claim of (i) a lessor for damages resulting from the rejection of a lease of real property as any such Claim shall be calculated in accordance with Bankruptcy Code Section 502(b)(6), or (ii) an employee Claim for damages resulting from the rejection of an employment agreement as any such Claim shall be calculated in accordance with Bankruptcy Code Section 502(b)(7), if any.   A Rejection Claim shall constitute an Unsecured Claim. |

| | |
|---|---|
| *Reorganized Debtor* | Means the Debtor, following the entry of the Confirmation Order. |
| *Schedules* | Means the schedules of assets and liabilities, the list of Holders of Equity Interests, and the statements of financial affairs filed by the Debtor under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments and modifications thereto through the Confirmation Date. |
| *Secured Claim* | Means a Claim that is secured by a lien on property in which the Estate has an interest or that is subject to setoff under Bankruptcy Code Section 553 of the Bankruptcy Code, to the extent of the value of the interest of the Holder of such a Claim in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code Sections 506(a) and, if applicable, 1129(b). |
| *Secured Tax Claim* | Means a Claim for property taxes that is secured by a lien on property in which the Estate has an interest to the extent of the value of the interest of the Holder of such a Claim in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code Sections 506(a) and, if applicable, 1129(b). |
| *Unimpaired* | Means, with respect to any Claim or Equity Interest, that such Claim or Equity Interest is not Impaired. |
| *Unsecured Claim* | Means any Claim against the Debtor other than an Administrative Expense Claim, an Employee Wage Claim, an Other Priority Non-Tax Claim, a Priority Tax Claim, or a Secured Claim, including, but not limited to, Rejection Claims. |
| *Unsecured Creditor* | Means any creditor holding an Unsecured Claim. |
| *Voting Deadline* | Means the date set by the Bankruptcy Court as the last date on which Ballots may be submitted. |
| *Voting Record Date* | Means 5:00 p.m. on the Business Day immediately preceding the Voting Deadline. |

### 1.2   Interpretation; Application of Definitions and Rules of Construction

For purposes of the Plan, unless otherwise provided herein: (i) whenever from the context it is appropriate, each term, whether stated the singular or the plural, will include both the singular and the plural; (ii) unless otherwise provided in the Plan, any reference in the Plan to a contract,

instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (iii) a reference in the Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to the Plan; (iv) any reference to an entity as a Holder of a Claim includes that entity's successor assigns, and affiliates; (v) all references in the Plan to sections, articles, and exhibits are references to sections, articles, and exhibits of or to the Plan; (vi) the words "herein," "hereunder," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (vii) captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (viii) subject to the provisions of any contract, articles of incorporation, code of regulations, similar constituent documents, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules, and (ix) the rules of construction set forth in Bankruptcy Code Section 102 shall apply.

      1.3    <u>Computation of Time</u>

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**Section 2:**    **ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS**

      2.1    <u>Administrative Expense Claims</u>

All payments to Professionals retained pursuant to Section 327 of the Bankruptcy Code for compensation and reimbursement of expenses will be made in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, Local Bankruptcy Rules of the Southern District of Texas, and the Bankruptcy Court relating to the payment of interim and final compensation and expenses. The Bankruptcy Court will review and determine all such requests for compensation and reimbursement of expenses.

Subject to certain requirements for Professionals and certain other entities set forth in this section, **the Debtor shall pay to each Holder of an Allowed Administrative Expense Claim**, on account of its Administrative Expense Claim and in full satisfaction thereof, **Cash equal to the amount of such Allowed Administrative Expense Claim on, or as soon as practicable after, the later of the Effective Date or the date on which such Claim becomes an Allowed Claim**, unless the Holder and the Debtor agree or shall have agreed to other treatment of such Claim; or, an order of the Bankruptcy Court provides for other terms, including, but not limited to, earlier payment of such Claim.

2.2    Deadline for Filing Administrative Expense Claims

Except for any Claims of the Debtor's Professionals, the Holder of any Administrative Expense Claim arising before the Effective Date shall file with the Bankruptcy Court and serve on the Debtor and the Office of the United States Trustee, a request for payment of such Administrative Expense Claim **no later than thirty (30) days after the Effective Date**. Such request for payment shall include, at a minimum, the name of the Holder of the Claim, the amount of the Claim, the date on which the Claim arose, and a detailed explanation of the basis of the Claim, with all pertinent documents attached. Administrative Expense Claims by any Professional seeking an award of compensation for services rendered or reimbursement of expenses incurred under Section 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5) or 506(b) of the Bankruptcy Code shall be paid within fourteen (14) days following the entry of an order by the Bankruptcy Court approving such Professional's application for interim and/or final compensation. Any Administrative Expense Claim that arose before the Effective Date that is not timely filed or approved in accordance with this Section *shall be forever barred and discharged*.

2.3    Priority Tax Claims

Except to the extent that a Holder of an Allowed Priority Tax Claim has been paid by the Debtor or the Estate before the Effective Date or agrees to a different treatment, each Holder of an Allowed Priority Tax Claim shall receive Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon as practicable after, the later of the Effective Date or the date such Priority Tax Claim becomes an Allowed Priority Tax Claim. Any Priority Tax Claim not filed by the Bar Date, or any other bar date applicable under the Bankruptcy Code or the Bankruptcy Rules shall be forever barred and discharged. **The Debtor believes that there are no Priority Tax Claims**. To the extent any such Claims exist, the Debtor shall pay such Claims on, or as soon as is practicable after, the Effective Date, or as agreed by the Debtor and the Holder of such Claim.

2.4    Full Settlement

The distributions provided for in Section 2.1 through 2.3 hereof are in full settlement, release, and discharge of all Administrative Expense Claims, existing as of the Effective Date of the Plan.

**Section 3:    CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS**

Claims against and Equity Interests in the Debtor are classified for all purposes, including voting, confirmation and distribution pursuant to the Plan as follows:

| Class | Description | Status | Voting Rights |
|---|---|---|---|
| 1 | General Unsecured Claims | Impaired | Entitled to Vote |
| 2 | Equity Interests | Impaired | Entitled to Vote |

- 9 -

Note: Administrative Expense Claims have not been classified (as set forth in Section 2 hereof) and are excluded from the foregoing Classes in accordance with Section 1123(a)(l) of the Bankruptcy Code.

**Section 4:        TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS**

4.1     Class 1 - General Unsecured Claims

Class 1 consists of all Allowed Unsecured Claims.  In the event no objection is filed to an Unsecured Claim, such Claim shall be deemed Allowed as filed (or, if not filed, as scheduled by the Debtor).

On or reasonably promptly after the Effective Date, each Holder of an Allowed Unsecured Claim shall receive a promissory note issued by the Debtor substantially similar to the promissory note attached hereto as **Addendum A** in the face amount of **FORTY PERCENT (40%)** of the original principal amount of such Holder's Allowed Unsecured Claim. For example, a Holder of an Allowed Unsecured Claim in the original principal amount of $250,000 shall receive a promissory note in the face amount of $100,000.

In addition, on or reasonably promptly after the Effective Date, each Holder of an Allowed Unsecured Claim shall receive a number of shares of common stock in the Reorganized Debtor equal to **ONE HUNDRED AND TWENTY PERCENT (120%)** of the original principal amount of such Holder's Allowed Unsecured Claim. For example, a Holder of an Allowed Unsecured Claim in the original principal amount of $250,000 shall receive 300,000 shares of common stock in the Reorganized Debtor.

Class 1 is *impaired* and the Holder of a Claim in Class 1 is entitled to vote to accept or to reject the Plan.

4.2     Class 2 - Equity Interests

Class 2 consists of Equity Interests in the Debtor.  The Debtor's issuance of additional shares as provided for under the Plan shall occur in accordance with and shall comply in all respects with the Debtor's existing corporate governance documents. To the extent that the Debtor's issuance of additional shares requires the approval of a sufficient number of outstanding Equity Interests, such approval shall continue to be required under the Plan.

Class 2 is *impaired* and the Holder of a Claim in Class 2 is entitled to vote to accept or to reject the Plan.

**Section 5:     IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS IMPAIRED AND UNIMPAIRED BY THE PLAN; ACCEPTANCE OR REJECTION OF THE PLAN**

5.1     <u>Holders of Claims Not Impaired by the Plan are Conclusively Presumed to Have Accepted the Plan</u>

Administrative Expense Claims and Priority Tax Claims are unimpaired by the Plan, and the Holders of such Claims are **conclusively presumed to have accepted the Plan** under Section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

Additionally, Class 2 is unimpaired by the Plan, and pursuant to Section 1126(f) of the Bankruptcy Code, the Holders of Claims or Equity Interests in such Class are conclusively presumed to have accepted the Plan and **therefore are not entitled to vote to accept or reject the Plan**.

5.2     <u>Holders of Claims Impaired by the Plan and Entitled to Vote</u>

Class 1 is impaired by the Plan, and the Holders of Allowed Claims in Class 1 **are entitled to vote to accept or reject the Plan**.

5.3     <u>Non-Consensual Confirmation</u>

If any impaired Class of Claims entitled to vote does not accept the Plan by the requisite majorities provided in Section 1126(c) of the Bankruptcy Code, or if any impaired Class of Claims or Equity Interests is deemed to reject the Plan, the Debtor reserves the right to: (a) amend the Plan in accordance with Section 13.2 hereof and/or (b) undertake to have the Bankruptcy Court confirm the Plan under Section 1129(b) of the Bankruptcy Code.  The Debtor will seek consensual confirmation if possible and confirmation by "cramdown" if necessary.

**Section 6:     MEANS FOR IMPLEMENTATION OF THE PLAN**

6.1     <u>Continuing Existence and Operation of the Debtor</u>

From and after the Confirmation Date, the Debtor shall continue in existence after the Effective Date as the Reorganized Debtor, a corporation subject to the laws of the State of Texas. The Reorganized Debtor shall continue to own the software and intellectual property known as RE:VENUE and will market, sell, and deliver its web-based service to new clients.

The Reorganized Debtor intends to raise new capital totaling $500,000 to cover the sales costs associated with marketing to the restaurant/bar market sector in the United States.  The Reorganized Debtor's target market consists of over 600,000 companies with a total annual revenue of $384 billion.  The market is fragmented and very competitive, with a majority of target accounts being in the small to medium range.  To effectively compete in attracting new and repeat clients, the RE:VENUE event based e-marking platform provides a competitive advantage to the target

owner/operators. The Reorganized Debtor's business plan provides for a sustainable annual revenue model through subscription licensing to the target market with variable priced offerings including: web-based broadcast offering; "eventcast" offering; and "supercast" offering. The latter two include "narrowcast" marketing solutions within the RE:VENUE solution.

As set forth more fully in the feasibility projections attached hereto as **Addendum B**, the Plan envisions the following monthly payments to the Holders of Allowed Unsecured Claims on account of the promissory notes issued under the Plan, in addition to normal ongoing operating expenses, beginning in 2018:

|     |                            |          |
| --- | -------------------------- | -------- |
| A.  | REVENUE LLC                | $ 6,000  |
| B.  | SPUR GROWTH PARTNERS, LLC  | $ 9,600  |
| C.  | OFFICE TRADE COMPANY       | $14,400  |

The Plan further contemplates that Holders of Equity Interests may not receive distributions on account of such Equity Interest until the unpaid balance of all promissory notes issued to the Holders of Allowed Unsecured Claims pursuant to the Plan is paid in full.

6.2     Post-Confirmation Corporate Governance

Martin Estill ("Estill") will join the Reorganized Debtor as its Chief Executive Officer and as a Member of the Board of Directors overseeing management of the Reorganized Debtor. Estill has over thirty years of experience in the software business. William Walker ("Walker") will continue to play a leadership role for the Reorganized Debtor by serving as Chairman of the Board of Directors.

6.3     Administration of the Plan

The Reorganized Debtor shall administer the Plan.  The Reorganized Debtor will: (1) continue its business operations; (2) pay the Estate's Professionals, pursuant to Court order authorizing such payment; (3) adjust and pay post-confirmation claims against the Debtor and/or the Reorganized Debtor; (4) prosecute and/or compromise and settle claims held by the Reorganized Debtor, if any; (5) make distributions required by the Plan; and (6) carry out any other duties that the Reorganized Debtor is required to perform under applicable law.

6.4     Compensation of Officers.

Neither Estill nor Walker shall be entitled to compensation from the Debtor or the Reorganized Debtor until the Debtor or the Reorganized Debtor has raised the new investment funds described above in full.  Neither Estill nor Walker shall have liability to the Reorganized Debtor or the Estate with respect to any action taken or not taken during the Chapter 11 Case or at any time before the Effective Date, except for acts or omissions constituting gross negligence, willful misconduct or fraud.

6.5     Distributions under the Plan

The Debtor shall make distributions to Holders of Claims and Equity Interests from business revenues in the manner and priority stated in the Plan.

6.6     Retention of Professionals by the Reorganized Debtor

On and after the Effective Date, the Reorganized Debtor will be authorized to retain attorneys, accountants, and other professionals as necessary to implement the Plan, on any reasonable terms, without further order of the Bankruptcy Court.  The Reorganized Debtor may retain counsel that previously represented the Debtor as Chapter 11 counsel, and such prior representation shall not be deemed a conflict of interest.

6.7     Reserve for Plan Expenses

Prior to making any distributions to Creditors or Equity Interest Holders under the Plan, and as soon as practicable after the Effective Date, the Reorganized Debtor may, at its discretion, set aside, deduct and reserve an amount of Cash from Estate Funds that will be equal to the estimated amount of Plan Expenses (the "Expense Reserve Fund").  Any Cash in the Expense Reserve Fund at the time of the closing of the Chapter 11 Case shall be distributed in accordance with the priority of payment set forth in the Plan.  In addition, nothing herein prevents or otherwise limits the Reorganized Debtor's right or authority to use any Estate Funds for payment of Plan Expenses in the ordinary course after the Effective Date.

6.8     Other Accounts

The Reorganized Debtor may retain whatever bank accounts the Debtor had on the Effective Date, and may establish one or more additional checking and/or interest-bearing accounts as necessary and appropriate to effectuate the terms and provisions of this Plan.

6.9     Causes of Action: Preservation, Retention and Authority

**A.  Vesting of Causes of Action**

(1)     Except as otherwise provided in this Plan or Confirmation Order, in accordance with

- 13 -

Section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtor may hold against any entity shall vest upon the Effective Date in the Reorganized Debtor.

(2)     Except as otherwise provided in this Plan or Confirmation Order, after the Effective Date, the Reorganized Debtor shall have the exclusive right to institute, prosecute, abandon, settle, or compromise any Causes of Action and without further order of the Bankruptcy Court, in any court or other tribunal, including without limitation, in an adversary proceeding.

(3)     Causes of Action and any recoveries therefrom shall remain the sole property of the Reorganized Debtor and Holders of Claims shall have no right to any such recovery.

## B. Preservation of All Causes of Action Not Expressly Settled or Released

Except as otherwise provided herein, all causes of action in favor of the Debtor existing on or before the Effective Date shall be preserved for the benefit of the Reorganized Debtor. Unless a Cause of Action is expressly waived, relinquished, released, compromised or settled in this Plan or any Final Order (including the Confirmation Order), the Debtor and Reorganized Debtor expressly reserve such Cause of Action for later adjudication by the Reorganized Debtor (including, without limitation, Causes of Action not specifically identified or described in the Plan or elsewhere or of which the Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances which may change or be different from those the Debtor believes to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel, (judicial, equitable, or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan, or Confirmation Order, except where such Causes of Action are expressly released in the Plan or any Final Order (including the Confirmation Order). In addition, the Debtor and Reorganized Debtor expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor or Reorganized Debtor are a defendant or an interested party, against any entity, without limitation, the plaintiffs or co-defendants in such lawsuits.

6.13     Closing of the Chapter 11 Case

When all Disputed Claims have become Allowed Claims, either by settlement or litigation, or have been disallowed by Final Order, and when all Professional fee applications have been resolved, the Reorganized Debtor may seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

6.14     Disputed Claims

The Reorganized Debtor and all parties in interest shall retain the right to object to Claims for a period of 30 days after the Effective Date.  The Bankruptcy Court shall retain jurisdiction over such

- 14 -

objections. Any Claim to which no objection is filed by the 31st day after the Effective Date shall be deemed to be Allowed in the amount shown on the proof of claim or reported in the Debtor's Schedules. Once an objection to a Claim or Interest is filed, the Claim shall become a Disputed Claim. If any portion of a Claim is disputed, no payment or distribution provided thereunder will be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim. To the extent that a Disputed Claim ultimately becomes an Allowed Claim, a distribution on account of such Allowed Claim will be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Reorganized Debtor shall provide to the Holder of such Claim the distribution to which such Holder is entitled under the Plan as if the Disputed Claim had been an Allowed Claim on the Initial Distribution Date, without any interest thereon. The Reorganized Debtor shall be authorized to compromise and settle Claim objections without Court approval so long as the Allowed Claim, as compromised, is less than $25,000 and is not a dispute concerning Professional fees.

When all Disputed Claims have been resolved and either (a) all Property of the Estate has been liquidated or (b) the Reorganized Debtor determines that any remaining assets of the estate are not worth the cost of collection, the Debtor will (1) pay all outstanding Plan Expenses, and (2) make a Final Distribution of Estate Funds to Holders of Allowed Claims in accordance with terms and priorities of the Plan.

## Section 7: PROVISIONS GOVERNING DISTRIBUTIONS

### 7.1    Delivery of Distributions

Subject to Bankruptcy Rule 9010, all distributions to any Holder of an Allowed Claim shall be made at the address of such Holder as set forth on the Schedules, or on any proof of claim filed by such Holder, whichever is applicable. Unless the Debtor has been notified in writing of a change of address, then the address on a proof of claim, shareholder list, or as listed in the Schedules is conclusively presumed to be the correct address of the Claimant (the "Proper Address"). In the event that any mail is returned from the Holder of an Allowed Claim on account that the mail at the Proper Address was "undeliverable," then the Reorganized Debtor is entitled to hold any Estate Funds sent to such address for a period of ninety (90) days. If the Holder of an Allowed Claim entitled to a distribution which was returned on account of an undeliverable address does not contact the Reorganized Debtor advising it of the correct address, in writing, within the ninety (90) day period, then any such distribution shall re-vest in the Reorganized Debtor and shall be distributed in accordance with the terms of this Plan, and the Claim of such Holder shall be barred forever.

7.2     Manner of Payment under the Plan

At the Reorganized Debtor's option, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.

7.3     Setoffs and Recoupment

The Reorganized Debtor may, but shall not be required to, set off against, or recoup from, any Claim the payments to be made pursuant to the Plan in respect any such Claim, any claims of any nature whatsoever that the Debtor may have against any Holder, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor of any such claim it may have against such claimant.

7.4     Initial Distribution

As soon as practicable after the Effective Date and subject to other specific provisions of the Plan, the Reorganized Debtor shall make distributions to the Holders of Allowed Claims from the Estate Funds in accordance with the priority scheme and schedule set forth in the Plan.

7.5     Date of Distributions

All distributions made on account of any Allowed Claims provided for under this Plan shall be deemed made on the Effective Date, notwithstanding the fact that any such distribution may actually occur, or will have been made after such date.  Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims on the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, and if so completed shall be deemed to have been completed as of the required date.

7.6     Minimum Distributions

The Debtor shall not be required to make a distribution of less than $5.00 unless requested in writing by the Person entitled to such distribution.  Any retained distributions shall be held in the Expense Reserve and spent accordingly.

7.7     Unclaimed Property

If any distribution remains unclaimed for a period of ninety (90) days after it has been delivered (or attempted to be delivered) to the Holder entitled thereto in accordance with the Plan, such unclaimed property shall be forfeited by such Holder whereupon all right, title and interest in

and to the unclaimed property shall revest in the Estate as Estate Funds to be distributed in accordance with the Plan.

### 7.8    Withholding Taxes

Any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder.  All Persons holding Allowed Claims shall be required to provide any information necessary to effect the withholding of such tax.

### 7.9    Fractional Cents

Any other provision of this Plan to the contrary notwithstanding, no payment of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

### Section 8:    PROCEDURES FOR TREATING DISPUTED CLAIMS UNDER THE PLAN

### 8.1    Disputed Claims Process

The Reorganized Debtor and all Creditors shall have the right to make and file objections to Claims **for a thirty (30) day period following the Effective Date**.  The Bankruptcy Court shall retain jurisdiction over such objections.  All objections shall be litigated to Final Order; provided, however, that the Reorganized Debtor shall have the authority to compromise, settle, otherwise resolve or withdraw any objections without Court approval.

### 8.2    No Distributions Pending Allowance

Notwithstanding any other provision hereof, if any portion of a Claim is Disputed, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

### 8.3    Distributions after Allowance

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, a distribution on account of such Allowed Claim shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Debtor shall provide to the Holder of such Claim the distribution to which such Holder is entitled under the Plan as if the Disputed Claim had been an Allowed Claim on the Initial Distribution Date, without any post-Effective Date interest thereon.

- 17 -

**Section 9:     TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

9.1      Assumption or Rejection of Executory Contracts and Unexpired Leases

The Debtor and/or Reorganized Debtor may assume or reject executory contracts or unexpired leases through the Plan. Hearing on the appropriateness of assumption or rejection, if necessary, may be combined with the Confirmation Hearing. All executory contracts and/or unexpired leases of the Debtor that have not expired by their own terms on or prior to the Effective Date, or that the Debtor has not expressly assumed or rejected during the pendency of the Chapter 11 case, and that are not the subject of a motion to assume or reject pending as of the Effective Date, shall be deemed assumed by the Debtor on the Effective Date. The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of any such assumptions, as applicable, pursuant to Sections 365(a) and 1123 of the Bankruptcy Code. Any objection to assumption shall be combined with the Confirmation Hearing.

9.2      Bar to Rejection Damage Claims

In the event that the rejection of an executory contract or unexpired lease by the Debtor or Reorganized Debtor results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Reorganized Debtor or Property of the Estate unless a proof of such claim is filed with the Bankruptcy Court and served upon Debtor's Counsel on or before thirty (30) days after the entry of an order by the Bankruptcy Court, which may be the Confirmation Order, authorizing rejection of a particular executory contract or lease. Except as set forth in Section 9.1 no further notice of the rejection of an executory contract or unexpired lease shall be provided by the Debtor or the Estate, other than the Confirmation Order.

**Section 10:     CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE**

10.1     Conditions to Confirmation Date

The Plan shall not be confirmed by the Bankruptcy Court unless and until the following conditions have been satisfied or waived pursuant to Section 10.3 of the Plan:

(a)      The Claims of Holders in each Impaired Class shall have voted to accept the Plan by the requisite majorities provided in Section 1126(c) of the Bankruptcy Code; or the Bankruptcy Court determines that the Plan may be confirmed pursuant to Section 1129(b), notwithstanding the rejection of the Plan by one or more Impaired Class.

- 18 -

10.2    Conditions Precedent to Effective Date of the Plan

The occurrence of the Effective Date of the Plan is subject to satisfaction of the following conditions precedent:

    (a)    The Confirmation Order, in form and substance satisfactory to the Debtor, shall have been entered by the Clerk of the Bankruptcy Court and such Confirmation Order shall have become a Final Order;

    (b)    All other actions and all agreements, instruments or other documents necessary to implement the terms and provisions hereof shall have been effected;

    (c)    The statutory fees owing to the United States Trustee shall have been paid in full;

    (d)    Any alteration or interpretation of any term or provision of the Plan by the Bankruptcy Court pursuant to Section 13 of the Plan shall be reasonably acceptable to the Debtor; and

    (e)    The Debtor shall have received all authorizations, consents, regulatory approvals, if any, that are determined to be necessary to implement the Plan.

    (f)    No Force Majeure Event shall have occurred.

10.3    Waiver of Conditions Precedent

Each of the conditions precedent in Section 10.1 and 10.2 hereof may be waived, in whole or in part, by the Debtor, except for a determination by Bankruptcy Court that the Plan may be confirmed.  Any such waivers of a condition precedent may be effected at any time, without notice, without leave or order of the Bankruptcy Court and without any formal action.

10.4    Effect of Failure of Conditions

In the event that one or more of the conditions specified in Section 10.2 of the Plan have not occurred on or before 90 days after the Confirmation Date or have not been waived pursuant to Section 10.3 hereof, (a) the Confirmation Order shall be vacated, (b) no distributions under the Plan shall be made, (c) the Debtor and all Holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred and (d) the Debtor's obligations with respect to Claims and Equity Interests shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceeding involving

the Debtor.

**Section 11:      EFFECT OF CONFIRMATION**

    11.1     <u>Vesting of Assets</u>

On the Effective Date, the Debtor, the Debtor's Property, its interests in Property and its operations shall be released from the custody and jurisdiction of the Bankruptcy Court, and the Estate of the Debtor shall vest in the Reorganized Debtor.  From and after the Effective Date, the Reorganized Debtor may operate its business and may use, sell, acquire and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, subject to the terms and conditions of the Plan.  The Reorganized Debtor shall be bound to all terms and conditions of the Plan which bind the Debtor.

    11.2     <u>Binding Effect</u>

Except as otherwise provided in Section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any Holder of a Claim against, or Equity Interest in, the Debtor and such Holder's respective successors and assigns, whether or not the Claim or Equity Interest of such Holder is impaired under the Plan and whether or not such Holder has accepted the Plan.

    11.3     <u>Discharge of Debtor</u>

The Debtor will receive a discharge of all Claims not expressly classified and provided for under the Plan.

    11.4     <u>Term of Injunction or Stays</u>

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 case pursuant to Sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant of the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms. Furthermore, all Creditors shall be enjoined from the commencement or continuation of any action or proceeding against the Reorganized Debtor, the Expense Reserve Fund, or any Estate Funds following the Effective Date, except for: (1) actions or proceeding filed in the Bankruptcy Court for the purpose of enforcing  the terms of the Plan; (2) orders granting relief from the automatic stay entered before the Effective Date; and (3) the rights of ad valorem taxing authorities to enforce their tax lien claims on Property of the Estate arising after the Effective Date, which actions shall not be enjoined.

**Section 12:**    **RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall, on and after the Effective Date, retain jurisdiction over the Chapter 11 Case, all Creditors, the Debtor, the Reorganized Debtor, and the Plan as is legally permissible, including, without limitation, jurisdiction to:

1.  allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the allowance or priority of Claims and Equity Interests;

2.  grant or deny any applications for allowance of compensation nor reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

3.  resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear, determine, and, if necessary, liquidate, any claims arising therefrom, including those matters related to any amendment or modification to the Plan after the Effective Date;

4.  ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

5.  decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Reorganized Debtor after the Effective Date, provided, however, that the Reorganized Debtor shall reserve the right to commence actions in all appropriate jurisdictions;

6.  enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures, and other agreements or documents adopted in connection with the Plan or the Disclosure Statement;

7.  resolve any cases, controversies, suits, or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the Plan, or any Person's obligations incurred in connection with the Plan;

8.  issue and enforce injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

- 21 -

9. enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked, or vacated;

10. resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture, or other agreement or document adopted in connection with the Plan or the Disclosure Statement;

11. adjudicate, decide, or resolve any and all matters related to Causes of Action;

12. adjudicate, decide, or resolve any and all matters related to Section 1141 of the Bankruptcy Code;

13. enter and enforce any order for the sale of property pursuant to Sections 363, 1123, or 1146(a) of the Bankruptcy Code;

14. resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any entity's obligations incurred in connection with the Plan;

15. consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

16. determine requests for payment of Claims and Equity Interests that may be entitled to priority pursuant to Section 507 of the Bankruptcy Code;

17. hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code; and

18. hear any other matter not inconsistent with the Bankruptcy Code.

## Section 13:    MISCELLANEOUS PROVISIONS

### 13.1    Payment of Statutory Fees

All fees payable pursuant to Article 1930 of title 28 of the United States Code after the Effective Date, as determined by the Bankruptcy Court at a hearing pursuant to Section 1128 of the Bankruptcy Code, shall be paid when due prior to the closing of the Chapter 11 case.

### 13.2    Modification of Plan

Subject to the limitations contained in the Plan:  (1) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules to amend or modify the Plan prior

to the entry of the Confirmation Order, including amendments or modifications to satisfy Section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Debtor or Reorganized Debtor, as the case may be, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with Section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 3019, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

13.3    Revocation of the Plan

The Debtor reserves the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order and to file subsequent Chapter 11 plans.  If the Debtor revokes or withdraws the Plan or if entry of the Confirmation Order or the Effective Date does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor; (b) prejudice in any manner the rights of the Debtor; or (c) constitute an admission of any sort by the Debtor.

13.4    Successors and Assigns

Except as otherwise provided in the Plan, the rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

13.5    Governing Law

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the state of Texas, without giving effect to the principles of conflict of laws thereof.

13.6    Reservation of Rights

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  Neither the filing of the Plan, any statement or provision contained in the Plan, nor the taking of any action by the Debtor with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtor with respect to the Holders of Claims or Equity Interests or other parties in interest; or (2) any Holder of a Claim or other party in interest prior to the Effective Date.

13.7    Plan Proposed In Good Faith

Upon entry of the Confirmation Order, the Debtor will be deemed to have proposed the Plan in good faith and in compliance with the Bankruptcy Code and any applicable non-bankruptcy law, and pursuant to and in compliance with Sections 1121 through 1129 of the Bankruptcy Code, the Debtor and its agents, representatives, members, principles, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in proposing the Plan.

13.8    Further Assurances

The Debtor, Reorganized Debtor, all Holders of Claims receiving distributions hereunder and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

13.9    Service of Documents

Any notice, request, or demand to or upon the Debtor shall be in writing (including by facsimile transmission and email) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission and/or email, when received and telephonically confirmed, addressed as follows to the Debtor or the Estate:

Baytex Credit Corp.
c/o Jarrod Martin
NATHAN SOMMERS JACOBS,
A PROFESSIONAL CORPORATION
2800 Post Oak Blvd. 61st Floor
Houston, TX 77056
(713) 960-0303 (main)
(713) 892-4800 (fax)
email: jmartin@nathansommers.com

13.10    Filing of Additional Documents

On or before the Effective Date, the Debtor may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

13.11    Entire Agreement

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations between the

Debtor and any Creditor or Equity Interest Holder on such subjects, all of which have become merged and integrated into the Plan.

### 13.12   Conflicts

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing) conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

### 13.13   Severability

If, prior to the entry of the Confirmation Order on the docket of the Chapter 11 Case, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter or interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtor's consent; and (3) non-severable and mutually dependent.

### 13.14   Article 1146 Exemption

Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

### 13.15   Immediate Binding Effect

Upon the occurrence of the Effective Date, the terms of this Plan shall be immediately effective and enforceable and deemed binding upon the Debtor, the Reorganized Debtor, and any and all Holders of Claims and Equity Interests (irrespective of whether such Claims or Equity Interests are deemed to have accepted the Plan), all Persons that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions, if any, described in the Plan, each entity acquiring property under the Plan, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtor, if any.

Dated: April 1, 2016

Respectfully submitted,


By: */s/ Jarrod Martin*
   Jarrod Martin
   State Bar No. 24070221
   Nathan Sommers Jacobs
   A Professional Corporation
   2800 Post Oak Blvd., 61st Floor
   Houston, Texas 77056
   Telephone: (713) 960-0303
   Facsimile: (713) 892-4800
   jmartin@nathansommers.com

Dated: April 1, 2016


**Baytex Credit Corporation**


By: /s/ William Vincent Walker
   William Vincent Walker

# ADDENDUM A – PROMISSORY NOTE

## PROMISSORY NOTE

$600,000.00                                   _____                    November 15, 2015

FOR VALUE RECEIVED, without grace, in the manner, on the dates, and in the amounts stipulated, the undersigned, BAYTEX CREDIT CORP. ("Maker")

PROMISES TO PAY TO THE ORDER OF

OFFICE TRADE COMPANY ("Holder or Payee")

At its offices in Houston, Texas the sum of Six Hundred Thousand Dollars ($600,000.00) in lawful money of the United Stated of America, and to pay no interest on the unpaid sum from the date of the Note until maturity.

This note is payable as follows: Principal shall be paid on or before November 16, 2016.

It is agreed that time is of the essence of this agreement, and that in the event of default in the payment of any amount due, the holder of this note may declare the entirety of the note immediately due and payable without notice, and failure to exercise this option shall not constitute a waiver on the part of the holder of the right to exercise it at any other time.

In the event of default in the making of any payment, either of principal or interest, or in the event the entirety of the note is declared due, interest shall accrue at the rate of 6% per annum from such time.

The undersigned hereby agrees to pay all expenses incurred, including an additional 10% on the amount of principal and interest due as attorney's fees, all of which shall become a part of the principal if this note is placed in the hands of an attorney for collection, or if collected by suit or through any probate, bankruptcy or any other legal proceedings.

Each maker, surety and endorse waived demand, grace, notice, presentment for payment, and protest and agrees and consents that this note and the liens securing its payment may be renewed, and the time of payment extended without notice a, and without releasing any of the parties.

BAYTEX CREDIT CORP. ("Maker")

By: _____



# ADDENDUM B – FEASIBILITY PROJECTIONS

**BAYTEX CREDIT CORP PRO FORMA FOUR YEAR BUDGET**

| | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|
| EFFECTIVE GROSS REVENUE | $ 104,960 | $ 327,500 | $ **1,274,500** | $ 1,890,000 |
| OPERATING EXPENSES | $ 109,598 | $ 478,000 | $ **758,641** | $ 1,417,500 |
| NET OPERATING INCOME | $ (4,638) | $ (150,500) | $ **515,859** | $ 472,500 |
| INVESTMENT | $ 500,000 | $ - | $ - | $ - |
| DEBT SERVICE | | | $ **360,000** | $ 140,000 |
| CASH FLOW | $ (4,638) | $ (150,500) | $ **155,859** | $ 332,500 |
| ENDING CASH | $ 495,362 | $ 344,862 | $ **500,721** | $ 833,221 |
| | | | | |
| EBITDA (%) | | -4% | -46% | 40% | 25% |
| YR-YR GROWTH % | | 312% | 389% | 148% |

BAYTEX CREDIT CORP PRO FORMA YEAR 2018 BUDGET

| EXPENSES | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SALARY (PAYROLL) | 20,666.67 | 20,666.67 | 24,000.00 | 26,500.00 | 32,166.67 | 33,500.00 | 36,166.67 | 36,166.67 | 36,166.67 | 36,166.67 | 36,166.67 | 36,166.67 | 374,500.00 |
| TAXES & BENEFITS & admin | 2,133.07 | 2,214.73 | 2,535.07 | 2,877.40 | 3,446.47 | 3,623.60 | 3,977.87 | 3,977.87 | 4,059.53 | 4,059.53 | 4,141.20 | 4,141.20 | 41,187.53 |
| CONTRACTOR FEES | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 30,000.00 |
| COMPUTER EQUIPMENT | | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,000.00 | | 14,500.00 |
| SUPPLIES | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 7,200.00 |
| POSTAGE & DELIVERY | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 600.00 |
| PRINTING & REPRODUCTION | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 3,000.00 |
| PROFESSIONAL FEES | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 9,000.00 |
| TECHNOLOGY | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 30,000.00 |
| TELEPHONE | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 18,000.00 |
| TRAVEL | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 60,000.00 |
| COST OF SALES | 5,963.75 | 1,406.25 | 6,831.25 | 12,225.00 | 7,631.25 | 2,868.75 | 11,543.75 | 3,218.75 | 8,218.75 | 11,665.63 | 8,493.75 | 3,581.25 | 83,653.13 |
| OFFICE LEASE | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 30,000.00 |
| MARKETING | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 30,000.00 |
| OVERHEAD | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 12,000.00 |
| MISCELLANEOUS | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 15,000.00 |
| BUDGET TOTAL COST | 49,168.48 | 46,187.65 | 55,266.32 | 63,502.40 | 65,144.38 | 61,892.35 | 73,988.28 | 65,263.28 | 70,344.95 | 73,791.83 | 70,201.62 | 64,289.12 | 758,840.66 |
| ACTUAL TOTAL COST | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| BUDGET REVENUE | 38,750.00 | 56,250.00 | 73,250.00 | 89,000.00 | 105,250.00 | 114,750.00 | 123,500.00 | 128,750.00 | 128,750.00 | 133,250.00 | 139,750.00 | 143,250.00 | 1,274,500.00 |
| ACTUAL REVENUE | 38,750.00 | 56,250.00 | 73,250.00 | 89,000.00 | 105,250.00 | 114,750.00 | 123,500.00 | 128,750.00 | 128,750.00 | 133,250.00 | 139,750.00 | 143,250.00 | 1,274,500.00 |
| | | | | | | | | | | | | | |
| EBITDA (Cash Basis) | (10,418.48) | 10,062.35 | 17,983.68 | 25,497.60 | 40,105.62 | 52,857.65 | 49,511.72 | 63,486.72 | 58,405.05 | 59,458.18 | 69,548.38 | 78,960.88 | 78,960.88 |
| | | | | | | | | | | | | | |
| DEBT SERVICE | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 |
| | | | | | | | | | | | | | |
| NET CASH (IN THE BANK) | 304,443.52 | 284,505.87 | 272,489.55 | 267,987.15 | 278,092.77 | 300,950.42 | 320,462.13 | 354,348.85 | 382,753.90 | 412,212.08 | 451,760.46 | 500,721.34 | |
| Starting Cash in Bank | 344,862.00 | | | | | | | | | | | | |